**HORIZON RESOURCES, INC., Horizon Exploration Company, A Division Of Horizon Resources, Inc., North Central Oil Corporation And Cxy Energy, Inc., Appellants,**

v.

**Sunni L. PUTNAM, Individually and as Successor Trustee to Larry W. Putnam, Trustee, Appellee.**

No. 13–96–478–CV.

Court of Appeals of Texas, Corpus Christi.

July 16, 1998.

Rehearing Overruled Oct. 1, 1998.

 

James J. Ormiston, Looper, Reed, Mark & McGraw, M. Steve Smith, Houston, Ken D. Lipscombe, Wharton, for appellants.

Larry E. Wadler, Wharton, Michael R. Wadler, Houston, for appellee.

Before SEERDE, C.J., and YAEZ and CHAVEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

Sunni Putnam, individually and as successor trustee to Larry Putnam, (hereinafter "Putnam") filed suit against Horizon Exploration Co., Horizon Resources, Inc., CXY Energy, Inc., and North Central Oil Corp., appellants, for royalties owed under an oil and gas lease. The trial court, finding that the overriding royalty was not subject to a proportionate reduction clause, granted Putnam's motion for summary judgment. We reverse and render judgment in favor of appellants.

### FACTUAL BACKGROUND

The procedural facts of this case are undisputed. On January 14, 1988, Larry W. Putnam, Trustee, leased 326.5 acres of land in Wharton County, Texas to Horizon Exploration Co., a division of Horizon Resources, Inc. The lease covered two tracts of land. Putnam owned an undivided 75% interest in Tract 1, and an undivided 50% interest in tract 2. Subsequent to execution of the lease, Horizon Exploration assigned undivided portions of the working interest in the lease to CXY Energy, Inc. and North Central Oil Corp. Sunni Putnam succeeded Larry Putnam as trustee of the trust which is the lessor under the lease.

The lease contained three provisions which are important to the disposition of this case. First, in the printed portion of the lease, Putnam reserved a 1/7th royalty on oil and gas production. Second, also in the printed portion of the lease, the parties agreed to a proportionate reduction clause. The proportionate reduction clause provided:

> [I]t is agreed that if this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate ... then the royalties, delay rental and other monies accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein.

Third, in an addendum attached to the lease, the parties provided for an overriding royalty of 2/35. Specifically, the overriding royalty clause stated:

> As additional bonus for the making of this lease, LESSOR shall receive an overriding two-thirty fifths (2/35) royalty in all oil, gas, liquid hydrocarbon and sulfur associated with their production, produced from these leased premises.

Appellants thereafter created a 320 acre unit which included 155.45 acres of tract 2. Therefore, pursuant to the lease, Putnam owned an undivided 50% interest in the 155.45 acres contributed to the 320 acre pooled unit. A gas well was drilled and completed on other acreage included within the pooled unit, and production began.

In January 1991, Putnam signed a division order acknowledging and confirming that Putnam's royalty interest and overriding royalty interest should be proportionately reduced to reflect Putnam's 50% ownership interest in the acreage contributed to the unit. The division order specifically states that the trust was to receive 50% of the 1/7th royalty and 50% of the 2/35ths overriding royalty relating to the trust's undivided 50% interest in the 155.45 acres contributed to the 320 acre pooled unit.

In April 1991, in accordance with the terms of the division order, appellants began making royalty payments, including payments for the overriding royalty, to Putnam for the trust's share of the production from the unit. All royalty and overriding royalty payments were reduced in accordance with the proportionate reduction clause. Putnam accepted these payments for over two years before filing the instant suit for owed royalties.

Putnam moved for summary judgment claiming that the 2/35ths overriding royalty reserved in the lease should not be subject to the proportionate reduction clause. Appellants filed cross-motions for summary judgment arguing that the lease unambiguously provided that all royalties and "other monies," including the overriding royalties, shall be subject to the proportionate reduction clause and thus reduced in proportion to the property interest actually owned by Putnam. The trial judge granted Putnam's motion, denied appellants' motion, and entered judgment that the 2/35ths overriding royalty reserved by Putnam in the lease should not be reduced in accordance with the proportionate reduction clause. Appellants, in four points of error, challenge the trial court's decision.

## DISCUSSION

The only issue in this case is the proper interpretation of the oil and gas lease. Spe-

cifically, we must determine whether the overriding royalty provision is subject to the proportionate reduction clause in the lease. Both parties agree that this is a question of law for our de novo review. *Fisk Electric Co. v. Constructors & Associates, Inc.,* 888 S.W.2d 813, 814 (Tex.1994); *Hofland v. Fireman's Fund Ins. Co.,* 907 S.W.2d 597, 599 (Tex.App.—Corpus Christi 1995, no writ). We treat it as such.

■ An oil and gas lease should be interpreted like any other contract. *McMahon v. Christmann,* 157 Tex. 403, 303 S.W.2d 341, 344 (1957). In construing an unambiguous contract, the court should give effect to the intention of the parties as expressed or as is apparent in the writing. *Exxon Corp. v. West Texas Gathering Co.,* 868 S.W.2d 299, 302 (Tex.1993). The language of a contract shall be given its plain grammatical meaning if possible, and the court should avoid any construction of a contract which is unreasonable, inequitable, and oppressive. *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex.1987). When interpreting a contract, the court must seek the intention of the parties as such intention is expressed in the lease by considering all provisions of the lease and harmonizing, if possible, those provisions which appear to be in conflict. *Luckel v. White,* 819 S.W.2d 459, 462 (Tex.1991); *McMahon,* 303 S.W.2d at 344.

■ Appellants, in applying the above rules of construction, argue that the printed proportionate reduction clause in the lease is applicable to the attached overriding royalty provision. Therefore, appellants conclude, Putnam is entitled to receive a 2/35 overriding royalty reduced by the proportion to which Putnam's interest bears to the whole.

In response, Putnam argues that both the language and the placement of the overriding royalty provision indicate that the parties did not intend for the overriding royalty to be proportionately reduced. In support, Putnam points out that while the royalty interest is described within the main body of the lease, the overriding royalty was set out in an addendum as an "additional bonus." According to Putnam, the parties could far more easily have bargained for a 1/5 royalty

(the result if the overriding royalty is subject to the proportionate reduction clause) rather than divide the royalty interest within two separate clauses of the lease. Only Putnam's interpretation, she argues, assures that every clause of the contract is given meaning. *See Concord Oil Co. et al. v. Pennzoil Producing Co., et al.*, 966 S.W.2d 451 (Tex.1998).

Putnam also points to the language used in drafting the overriding royalty provision. For example, the parties provided for an "overriding" royalty as an "additional bonus." Additionally, Putnam argues that by indicating that the overriding royalty was to be calculated based upon production for "the leased premises" as opposed to "said land" the parties were demonstrating their intention that the overriding royalty was not to be reduced.

Few cases discuss the relationship between a proportionate reduction clause found within the body of the lease and an overriding royalty provision attached as an addendum. The Texas Supreme Court, in *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341 (1957), was called upon to construe an oil and gas lease with a printed proportionate reduction clause and a typewritten rider reserving an overriding royalty. Under the lease, the lessor reserved the standard 1/8th royalty. The overriding royalty provision, found in a rider to the lease, provided:

> The lessors herein reserved unto themselves their heirs and assigns, without reduction, as an overriding royalty, a net 1/32nd of 8/8ths of all oil or gas produced and saved from the above described premises, free of cost or expense to the credit of the lessors into the storage tank or tanks or into the pipeline to which the well or wells on said land may be connected.

Both parties agreed that the proportionate reduction clause found within the body of the lease, applied to the standard royalty provision. The issue before the supreme court was whether the proportionate reduction clause applied to the attached overriding royalty provision.

The Texas Supreme Court held that it did not. However, in reaching its decision the court pointed to the express language found in the overriding royalty clause. The court noted:

> If the clause providing for the 1/32nd overriding royalty did not provide that the reserved royalty was "without reduction" the problem of construing the lease would present no great difficulty. The overriding royalty is, withal, "royalty," [citations omitted] and in the absence of the words "without reduction" the proportionate reduction clause would require its reduction to a 1/192nd of production.

*Id.* 303 S.W.2d at 344.

In *Newport Oil Co. v. Lamb*, 352 S.W.2d 861 (Tex.Civ.App.—Eastland 1962, no writ), the Eastland Court of Civil Appeals considered a similar situation. There, the lessor reserved a 1/8th standard royalty. The overriding royalty provision, found in a typewritten rider, provided:

> Lessor hereunder hereby reserves unto itself, its successors and assigns an additional one-eighth (1/8) of seven-eighths (7/8) overriding royalty of all of the oil, gas and other minerals produced on the above described property . . . .

The trial court found that, by reason of the proportionate reduction clause, the overriding royalty was reduced in proportion to the interest actually owned by the lessor at the time the lease was executed. The Eastland Court, in affirming the decision of the trial court, held that, absent express language to the contrary, the proportionate reduction clause, although found in the printed portion of the lease, was applicable to the overriding royalty provision. In distinguishing its holding from *McMahon*, the Eastland Court noted that "the overriding royalty provision in the *McMahon* case uses the words 'without reduction' and 'net,' which we do not have in the overriding royalty provision in the case at bar." *Id.* at 862.

Similarly, the overriding royalty provision in the case at hand did not use the words "without reduction" or "net," or any other express language indicating that the parties intended it to be exempted from application of the proportionate reduction clause. Therefore, under *McMahon* and *Newport Oil*, the 2/35's overriding royalty should be

reduced by application of the proportionate reduction clause.

Furthermore, from a reading of the entire lease and addendum, it appears that the parties understood the interplay between provisions found in the body of the lease and provisions placed in the addendum. For example, two clauses found in the addendum begin with the phrase "notwithstanding anything contained elsewhere herein to the contrary...." Such a phrase is sufficient to amend a clause found elsewhere in the lease, or to distinguish the clause found in the addendum from any contrary provision in the body of the lease. Similarly, if used in the overriding royalty provision, the phrase would exempt the overriding royalties from the proportionate reduction clause. The absence of this particular phrase, where it is included in conjunction with other provisions, is evidence of the parties' intent to apply the proportionate reduction clause to the overriding royalty provision.

We do not find Putnam's arguments to the contrary to be persuasive. Neither the placement of the provision in an addendum nor the use of the terms "leased premises," "additional," "bonus," or "overriding" evidence an intent on behalf of the parties to exclude the applicability of other provisions found within the lease. In fact, the words "additional" and "overriding" were of no apparent consequence in the overriding royalty provision utilized in the *Newport Oil* case. (See above). Additionally, Putnam's reliance on *Concord Oil* is misplaced. In *Concord Oil*, the Texas Supreme Court was faced with reconciling an inherent conflict in the oil and gas lease. *Concord Oil Co.*, 966 S.W.2d at 452–53. Specifically, the granting clause of the mineral deed describes a 1/96 interest in the minerals, but a subsequent clause states that the conveyance covers and includes 1/12 of all rentals and royalty payable under the terms of an existing lease. The lease at issue in the case at hand, however, does not contain such an inherent conflict.

## CONCLUSION

Under the holdings announced in *McMahon* and *Newport Oil,* we hold that the overriding royalty provision was subject to the proportionate reduction clause. As such, we hold that the trial court erred in granting summary judgment in favor of Putnam. Accordingly, we sustain appellants' points of error, reverse the judgment of the trial court, and render judgment [1] that the overriding royalties be reduced in proportion to the property interest actually owned by Putnam in accordance with the proportionate reduction clause, and that appellee take nothing.

---

1. When both parties move for summary judgment, appellate court has authority to reverse trial court judgment and render such judgment as trial court should have rendered, including rendering judgment for other movant. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988); *The Cadle Co. v. Butler,* 951 S.W.2d 901, 905 (Tex. App.—Corpus Christi 1997, no writ).