Opinion issued September 2, 2004












In The
Court of Appeals
For the
First District of Texas
____________

NO. 01-03-01271-CV
____________

IN RE CNA HOLDINGS, INC. AND CELANESE LTD., Relators




Original Proceeding on Petition for Writ of Mandamus




MEMORANDUM OPINIONRelators CNA Holdings, Inc. and Celanese Ltd. have filed a petition for a writ
of mandamus complaining of two orders the trial court


 signed on December 5, 2003. 
The first order grants the real parties in interest’s “Motion to Enforce Rule 11
Agreement” (the Rule 11 order). The second order incorporates and memorializes 
bench rulings made on discovery issues during a July 21, 2003 oral hearing (the
discovery order). We conditionally grant the petition for writ of mandamus.
BACKGROUND
A. The Discovery Dispute
          Elvin Rodgers


 filed the underlying lawsuit against relators and numerous other
defendants for injuries he allegedly sustained as a result of asbestos exposure at their
Deer Park, Texas plant, during his career as an electrician. Rodgers filed numerous
requests for production of documents, which relators contended were irrelevant,
overbroad, and unduly burdensome. Rodgers moved to compel the production. On
July 21, 2003, the trial court held a hearing on Rodgers’s motion, at which she orally
ordered Celanese to produce documents responsive to Rodgers’s requests without
limitation. 
B. The First Mandamus Proceeding
          Relators then filed a petition for writ of mandamus in this Court. See In re
CNA Holdings, Inc., No. 01-03-01100-CV (Tex. App.—Houston [1st Dist.] Nov. 6,
2003, orig. proceeding). On November 6, 2003, in an interlocutory order denying
relator’s request for emergency relief, this Court (1) held that relators were not
obligated to produce documents to the real parties in interest, because there was no
written order from the trial judge compelling discovery and setting a specific deadline
for relators to comply; and (2) abated the mandamus proceeding so that the parties
could obtain an appropriate written order from the trial judge. In the same order, we
informed the parties that if they did not file a copy of such an order with the Clerk of
this Court no later than 5:00 p.m., Monday, November 17, 2003, the Court might
deny the petition for a writ of mandamus. We lifted the abatement on November 18,
2003, and on November 24, 2003, we denied the first Petition for Writ of Mandamus,
because no party had filed a written order giving a specific date for production of
documents.
C. The Alleged Rule 11 Agreement
          On November 3, 2003, during the pendency of the first mandamus in this
Court, Celanese’s counsel sent a letter to Rodgers’s counsel, in which he stated,
By agreement of the parties, Celanese’s deadline to comply with Judge
Criss’ order is today. Therefore, we have at various locales throughout
the county, approximate [sic] one thousand boxes of documents
available for inspection and copying relating to various Celanese
facilities across the country. Please contact us to discuss an appropriate
schedule for your inspection and copying of these documents.

          * * * *
 
Please note that if either the Court of Appeals or the Texas Supreme
Court grants a stay, this production will be suspended until such time
that a determination on the merits of Celanese’s petition is made. Of
course, if either court ultimately grants Celanese’s requested mandamus
relief, the document production will be terminated.
 
In no way should Celanese’s attempt to comply with Judge Criss’ order
be viewed as an indication that the requested discovery is anything other
than overly broad and unduly burdensome. If forced to fully comply
with Judge Criss’ order, the production process will involve numerous
stages of production spanning much of the country and quite literally
millions of pages of documents.

The November 3rd letter also requested that Rodgers execute a confidentiality
agreement prior to the production of documents. On November 5, 2003, relators
received an executed copy of the confidentiality agreement requested in its November
3rd letter to Rodgers.
          On November 6, 2003, this Court issued its interlocutory order abating the first
mandamus proceeding because the record did not contain a written order specifying 
a date by which relators must comply with the discovery requests.
          On November 7, 2003, relators sent a letter to Rodgers, which provided in
pertinent part:
In light of the First Court of Appeal’s Memorandum Order of November
6, 2003, the offer to produce documents on behalf of CELANESE LTD
and CNA HOLDINGS, INC. contained in my letter of November 3,
2003, is hereby withdrawn.
 
If you are interested in memorializing Judge Criss’s Order, please
contact me to discuss its form. If instead you wish to discuss discovery
tailored to the facts of our case, we are also willing to engage in
discussion toward that end as well.

          On November 17, 2004, Rodgers’s counsel faxed to Celanese a copy of
Celanese’s November 3rd letter, with the inserted handwritten notation “Agreed,” and
the signature of Rodgers’s counsel, Lance Lubel.
          On November 24, 2003, after this Court had issued its final opinion dismissing
the first mandamus, Rodgers filed a “Motion to Enforce Rule 11 Agreement” in the
trial court.
D. The Trial Court’s Rulings
          On December 5, 2003, the trial court held a hearing on Rodgers’s motion to
enforce the purported Rule 11 agreement. At the hearing, Rodgers’s counsel
requested (1) that the trial court sign an order compelling relators to produce
documents by a date certain, and (2) that the trial court enforce the Rule 11
Agreement according to the terms of the November 3rd letter from Celanese to
Rodgers. After the hearing, the trial court entered the discovery order and the rule 11
order. In the discovery order, the trial court incorporated its oral rulings of July 21,
2003, and gave Celanese three days to produce the responsive documents. In the
Rule 11 order, the trial court concluded that the November 3rd letter from Celanese
to Rodgers is an agreement to produce the requested documents in exchange for
execution of a confidentiality agreement. The trial court further stated that
“Celanese’s withdrawal from the agreement after Plaintiffs had fully complied does
not authorize the court to ignore the agreement.”
          Relators then filed the present mandamus proceeding, contending that the trial
court clearly abused its discretion by (1) construing the November 3rd letter from
Celanese to Rodgers as a Rule 11 agreement, and (2) ordering discovery that is
facially overbroad.
STANDARD OF REVIEW
          Mandamus is available to correct a clear abuse of discretion if the relator has
no adequate remedy at law. Canadian Helicopters, Ltd. v. Wittig, 876 S.W.2d 304,
305 (Tex. 1994) (orig. proceeding). The burden of establishing an abuse of discretion
and an inadequate appellate remedy is on the party resisting discovery, and this
burden is a heavy one. Id. A clear abuse of discretion occurs when an action is “so
arbitrary and unreasonable as to amount to a clear and prejudicial error of law.” 
Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex.1985). Generally,
the scope of discovery is within the trial court’s discretion. Dillard Dep’t Stores, Inc.
v. Hall, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding). However, the trial court
must make an effort to impose reasonable discovery limits. In re Am. Optical Corp.,
988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding). The trial court abuses its
discretion by ordering discovery that exceeds that permitted by the rules of procedure.
Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding). Our
procedural rules define the general scope of discovery as any unprivileged
information relevant to the subject of the action, even if it would be inadmissible at
trial, as long as the information sought is “‘reasonably calculated to lead to the
discovery of admissible evidence.’” In re CSX Corp., 124 S.W.3d 149, 152 (Tex.
2003) (orig. proceeding) (quoting Tex. R. Civ. P. 192.3(a)). Although the scope of
discovery is broad, requests must show a reasonable expectation of obtaining
information that will aid the dispute’s resolution. CSX Corp., 124 S.W.3d at 152.
Thus, discovery requests must be reasonably tailored to include only relevant matters. 
Am. Optical Corp., 988 S.W.2d at 713.
ANALYSIS
          To determine the merits of this mandamus proceeding, we address two issues. 
First, we decide whether relators and Rodgers entered into a Rule 11 agreement to
produce the documents. Second, if no such agreement exists, we decide whether the
scope of discovery ordered by the trial court is an abuse of discretion.
A. The Purported Letter Agreement
          Rodgers contends that we need not decide whether its discovery requests were
appropriate because relators, in their November 3rd letter, agreed to produce the
disputed documents. Essentially, Rodgers argues that relators waived their right to
complain about the discovery requests, because they agreed to produce the
documents. We disagree.
          In interpreting a Rule 11 agreement, we apply the following rules of contractual
construction by analogy.


 See Padilla v. LaFrance, 907 S.W.2d 454, 460 (Tex. 1995)
(analogizing writing requirement of Rule 11 to contractual statute of frauds
requirement). If the contract “‘is so worded that it can be given a certain or definite
legal meaning or interpretation, then it is not ambiguous and the court will construe
[it] as a matter of law.’” Taylor-Made Hose, Inc. v. Wilkerson, 21 S.W.3d 484, 488
(Tex. App.—San Antonio 2000, pet. denied) (quoting Coker v. Coker, 650 S.W.2d
391, 393 (Tex. 1983)) (alteration in original). In construing a contract, a court’s
primary concern is discerning the true intentions of the parties as expressed by the
contract. Coker, 650 S.W.2d at 393. To determine the parties’ intentions, courts
consider the entire writing, seeking to harmonize and give effect to all contractual
provisions, if possible. Hofland v. Fireman’s Fund Ins. Co., 907 S.W.2d 597, 599
(Tex. App.—Corpus Christi 1995, no writ). The language used by the parties is to
be given its plain, grammatical meaning unless it appears that to do so would defeat
the parties’ intentions. Lyons v. Montgomery, 701 S.W.2d 641, 643 (Tex. 1985). 
That the parties draw differing interpretations or that the contract uses unclear or
uncertain language does not necessarily render a contract ambiguous. See Weslaco
Fed'n of Teachers v. Tex. Educ. Agency, 27 S.W.3d 258, 264 (Tex. App.—Austin
2000, no pet.).
          The purported Rule 11 agreement unambiguously shows that relators arranged
to produce the documents only under the compulsion of the trial court’s order. In
fact, the first sentence of the letter indicates that relators had “instituted mandamus
proceedings seeking to overturn Judge Criss’ order compelling the production of
documents responsive to certain Requests for Production.” The letter further states,
“In no way should Celanese’s attempt to comply with Judge Criss’ order be viewed
as an indication that the requested discovery is anything other than overly broad and
unduly burdensome. If forced to fully comply with Judge Criss’ order, the production
process will involve numerous stages of production spanning much of the country and
quite literally millions of pages of documents.” (Emphasis added).
          The letter makes abundantly clear that Celanese was dissatisfied with the trial
court’s order to produce documents, and that it tendered the documents only under
the compulsion of the trial court’s order. Nothing in the letter indicates that relators
intended to waive their right to have the order overturned, either by this Court or the
Texas Supreme Court, by voluntarily producing the disputed documents. Relators
merely attempted to comply with the trial court’s order, until it could be overturned,
by initiating a mechanism for producing those documents to Rodgers in a timely
fashion.
          Because relators did not voluntarily offer to produce the disputed documents,
but were doing so only under compulsion of a court order, there is no valid Rule 11
agreement. Accordingly, we hold that the trial court abused its discretion by
construing the November 3rd letter from relators to Rodgers as a Rule 11 agreement. 
As such, the letter cannot serve as the basis for requiring relators to produce the
disputed documents. 
B. The Scope of Discovery
          Having decided that the November 3rd letter does not require relators to
produce the disputed discovery, we turn to the issue of the discovery order entered
by the trial court. At issue in this mandamus proceeding are 14 requests for
production. We list the following requests as examples:
All epidemiological and toxicological tests, studies, and research
conducted by or on behalf of Defendant(s) that refer or relate to
asbestos, benzene, vinyl chloride, and/or toluene.
 
All epidemiological and toxicological tests, studies, and research
conducted by or on behalf of any industry or trade organization that
Defendant(s) was/is a member that refers or relates to asbestos, benzene,
vinyl chloride, and/or toluene.
 
All documents that refer or relate to safety policies, industrial hygiene
policies, and/or hazardous substances communications programs
pertaining to asbestos.
 
All complaints or lawsuits received by Defendant(s) with regard to
personal injuries or deaths allegedly caused by asbestos.
 
Material Safety Data Sheets for the chemicals and substances referenced
to in Plaintiff’s petition.

          Relators argue that the discovery requests are overbroad because they are not 
(1) limited to the time during which Rodgers worked at Celanese’s facility in Deer
Park, Texas, (2) limited to the Deer Park facility, the only Celanese facility at issue
in the lawsuit; or (3) limited to asbestos, the only substance at issue in the lawsuit.
          We agree. In Dillard Dep’t Stores v. Hall, the Texas Supreme Court held that
a request for Dillards to perform a 20-state search for documents over a five-year
period was overly broad as a matter of law. 909 S.W.2d at 492. The Texas Supreme
Court noted that requests for document production may not be used simply to explore. 
Id. Similarly, in Texaco, Inc. v. Sanderson, the plaintiffs claimed that they were
injured by exposure to benzene and requested all safety and toxicology documents
written by Texaco’s safety director, including documents related to other employees’
injuries, other Texaco plants, and during time periods during which the plaintiffs did
not work at a Texaco facility. 898 S.W.2d at 814. The Texas Supreme Court held that
the discovery requests were “not merely an impermissible fishing expedition; it [was]
an effort to dredge the lake in hopes of finding a fish.” Id. at 815.
          As recently as one month before the trial court entered the discovery order in
this case, the Texas Supreme Court again struck down an overly broad discovery
request. The Court held that a request to identify all safety employees who worked
for the relators during a 30-year period of time is overbroad, because the plaintiff did
not work for relators during that entire time frame. See In re CSX Corp., 124 S.W.3d
149, 153 (Tex. 2003) (discovery requests lacking “reasonable limitations as to time
and subject matter” are overbroad).
          We also note that our sister appellate court, in two recent Memorandum
Opinions, considered and rejected almost identical requests for production,
propounded by the same plaintiffs’ counsel and sustained by the same trial court as
those involved in this case. See In re Reynolds Metals Co., No. 14-04-00001-CV
(Tex. App.—Houston [14th Dist.] April 5, 2004) (conditionally granting mandamus
relief); In re Southwestern Refining Co., No. 14-04-00035-CV (Tex. App.—Houston
[14th Dist.] April 15, 2004) (same).
CONCLUSION
          We hold that the discovery requests in this case are overbroad as written,
because they are not appropriately limited in time and subject matter. Thus, the trial
court’s discovery order is a clear abuse of discretion for which relators have no
adequate appellate remedy. See In re CSX, 124 S.W.3d at 153 (holding that there is
no adequate appellate remedy for being improperly order to produce overbroad
discovery that is almost unlimited as to time). Accordingly, we conditionally grant
mandamus relief, and direct the trial judge to vacate her December 5, 2003 discovery
order and her December 5, 2003 Rule 11 order. We order the trial court to review the
disputed requests individually in light of this opinion. The writ will issue only if the
trial court fails to act promptly in accord with this opinion.
 
 
 
                                                                        Sherry Radack
                                                                        Chief Justice

Panel consists of Chief Justice Sherry Radack and Justices Bland and Oakley.